UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN J. DUPONT and RANDY MOSELEY, <br><br> Plaintiffs, <br><br> v. <br><br> FREIGHT FEEDER AIRCRAFT CORPORATION, INC., L. DAVID BRIDGES, R. DARBY BOLAND, STEPHEN CARMICHAEL, H. CLIFF SAYLOR, EDWARD F. EATON, WILL WEEKS and KIM LITTLEFIELD, <br><br> Defendants. | Case No. 13-cv-256-JPG-DGW |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for partial summary judgment and/or to dismiss Count 2 filed by defendants L. David Bridges and Kim Littlefield (Doc. 72). Plaintiffs John J. Dupont and Randy Moseley have responded to the motion (Doc. 77).

**I.    Background**

This case stems from a May 2011 settlement agreement (and several addenda thereto) (collectively, "the Settlement Agreement") between the parties to this case and others who are not present in this lawsuit. The Settlement Agreement resolved another case in this district, *Freight Feeder Aircraft Corp. v. Dupont*, 11-cv-259-JPG-DGW, involving allegation of securities fraud, fraudulent misrepresentation, negligent misrepresentation, misappropriate of trade secrets, breach of contract, promissory estoppel, breach of the duty of good faith and fair dealing, breach of fiduciary duty and self-dealing.

In an order dated February 13, 2014, Magistrate Judge Donald G. Wilkerson described the plaintiffs' view of the events leading to the filing of *Freight Feeder Aircraft Corp. v. Dupont*:

According to the First Amended Complaint, John J. Dupont founded American

> Utilicraft Corporation (now named Utilicraft) in 1990 in order to produce specialized freight aircraft. In 2007, Freight Feeder Aircraft Corporation ("FFAC") entered into an Asset Purchase Agreement with Utilicraft, to purchase certain patents related to the design, use, and control of freight aircrafts, and an employment agreement with Dupont [that allowed him to retain management control over FFAC. Utilicraft also obtained royalty and ownership interests in FFAC.] In 2009, the individual Defendants (who appear to be the principals and directors of FFAC) sought to buyout Dupont's interest in FFAC and terminate his employment agreement. The buyout agreement contained various clauses in which FFAC would compensate Dupont for relinquishing his interests in FFAC. Plaintiffs allege that FFAC failed to execute its part of the agreement, by failing to pay certain sums to Dupont, and further represented to him (in January 2010) that the buy-out agreement (a liability for FFAC) would be held by a shell corporation once the assets of FFAC were sold to a third party, MidAmerica Aircraft Corporation ("MidAmerica," which also is owned and controlled by the individuals controlling FFAC). Plaintiff Randy Moseley began employment with FFAC in December 2007 as its Chief Financial Officer and director. He also had an employment agreement with FFAC that "has been inexorably terminated" by the sale of FFAC's assets to MidAmerica.

Memorandum and Order at 1-2 (Doc. 64) (footnotes omitted). *Freight Feeder Aircraft Corp. v. Dupont* was settled by the Settlement Agreement at issue in this case.

The Court described the salient parts of the Settlement Agreement in an order dated October 24, 2013.

> Among other things, the Settlement Agreement obligated Freight Feeder to make reasonable efforts to negotiate and close a sale of its assets, to pay certain sums to Dupont and Moseley following the sale, and to pay Dupont certain sums on a monthly basis if the sale did not occur within a certain time after the Settlement Agreement was executed. The Settlement Agreement specifically states, in pertinent part:
>
>> 5.35   Freight Feeder shall use commercially reasonable efforts to successfully close a Freight Feeder Asset Sale within six (6) months of the Signature Date. Should the Funding Date not occur within six (6) months following the Signature Date, beginning in the seventh month following the Signature Date Freight Feeder shall pay to Dupont monthly payments of Ten Thousand Dollars ($10,000) (the "Adequate Protection Payment") for each month that a Freight Feeder Asset Sale has not been closed. The Adequate Protection Payment shall be due on the fifteenth (15th) day of each given month.
>
> . . . . The addenda to the Settlement Agreement extended the Settlement Agreement's deadlines.

2

Memorandum and Order at 2 (Doc. 56).

In this suit, Dupont and Moseley bring a claim against FFAC for breach of the Settlement Agreement (Count 1). They also sue a number of individual parties to the Settlement Agreement (defendants Bridges, R. Darby Boland, Kevin Williams, Carmichael, Saylor, Edward F. Eaton, Will Weeks and Kim Littlefield) for fraud based on a January 7, 2013, representation by their counsel (Count 2). The only remaining individual defendants are Bridges and Littlefield.

In the pending motion, Bridges and Littlefield ask the Court for summary judgment on Count 2 or, in the alternative, to dismiss Count 2 for failure to state a claim. The Court considers only the request for summary judgment, which is dispositive of Count 2.

## II.     Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of

3

the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

**III.  Relevant Facts**

Viewed in the light most favorable to Dupont and Moseley, the evidence establishes the following relevant facts.

By late 2012, FFAC had not been able to negotiate and sell its assets as contemplated in the Settlement Agreement and had incurred the obligation under the Settlement Agreement to pay Dupont monthly $10,000 "Adequate Protection Payments."

In an e-mail dated January 7, 2013, the defendants' counsel told the plaintiffs' counsel that FFAC did not have sufficient funds to pay Dupont the December 2012 payment but that Bridges "thinks he will be in a better position to fund the monthly payments if the FFAC team assumes

control over [Utilicraft]," that is, if Dupont and Mosely resigned from their positions with Utilicraft, a major FFAC shareholder, and allowed FFAC's management to assume control over Utilicraft. This statement attributable to Bridges is the representation that serves as the basis for Count 2.

This statement was made while the parties were negotiating a third addendum to the Settlement Agreement. In those negotiations, the plaintiffs' counsel expressed concern about tying Dupont and Moseley's resignations to Dupont's receipt of Adequate Protection Payments. The plaintiffs' counsel also confirmed that Dupont and Mosely supported transitioning Utilicraft's management to FFAC people to raise the value of Utilicraft stock and independent of whether monthly payments under the Settlement Agreement were made.

Ultimately, Dupont and Moseley resigned from Utilicraft, but that did not result in more investment in FFAC. FFAC paid Dupont $10,000 in January 2013 but missed the February 2013 and all subsequent Adequate Protection Payments. Several months later, FFAC sold the assets it had originally obtained from Utilicraft to a third party, Covenant Aerospace, Inc., which developed the aircraft originally designed by Utilicraft.

Bridges does not contest that he made the statement attributed to him on January 7, 2013, but explains in an affidavit that, at that time, he truly believed FFAC would be more likely to be able to make the required payments to Dupont if Dupont and Mosely resigned from Utilicraft. He believed that under Dupont's leadership, Utilicraft's share value had decreased and that other Utilicraft shareholders would be more likely to invest in FFAC if Dupont was not involved in controlling Utilicraft, a major FFAC shareholder.

In fact, Utilicraft did not decrease in value under Dupont's and Moseley's leadership, which now leads Dupont to believe Bridges' January 7, 2013, statement was an intentional

falsehood.

**IV.     Analysis**

In order to prevail on a common law fraud claim, a plaintiff must prove "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 591 (Ill. 1996).   The defendants challenge the plaintiffs' ability to prove a false statement, reliance on the statement and damages from any reliance.

As a preliminary matter, the Court notes that there is no evidence from which a reasonable jury could find that Littlefield made any statement on or around January 7, 2013, much less a false one of material fact.   The e-mail upon which the plaintiffs rely to show a false statement clearly attributes the statement in question to Bridges alone, not Littlefield or anyone else.   Because there is no evidence of a false statement from Littlefield on or around January 7, 2013, Littlefield is entitled to summary judgment on Count 2.

With respect to the allegedly false statement by Bridges, the defendants note that Bridges did not absolutely promise that FFAC would be able to make Adequate Protection Payments to Dupont if he and Moseley resigned.   He simply stated that, in his opinion, FFAC would be in a better position to make such payments.   This is the kind of opinion statement that cannot serve as the basis for a common law fraud claim.   "Courts do not deem statements regarding future or contingent events, expectations and probabilities as fraud.   Rather, courts regard such statements as mere expressions of opinion or mere promises or conjectures upon which the other party has no right to rely."   *Hofner v. Glenn Ingram & Co.*, 489 N.E.2d 311, 317 (Ill. App. Ct. 1985) (citing *Hayes v. Disque*, 82 N.E.2d 350, 355 (1948) ("a charge of misrepresentation must be predicated

6

upon statements of fact, rather than mere expression of opinion or prophesy.")). Here, it was merely Bridges' opinion that the plaintiffs' resignations would help find investors in FFAC, not a statement of fact that the resignations would, in fact, achieve that end.

Furthermore, there is no evidence from which a reasonable jury could find Bridges did not truly hold the opinion he expressed in his statement. The plaintiffs point to that fact that under their leadership the value of Utilicraft *did not* decline to argue there is a genuine issue of material fact about whether Bridges actually though investors would be more likely to invest in FFAC without Dupont managing it. The Court finds that, even if Utilicraft did not decline in value under the plaintiffs' leadership, there is not enough evidence for a reasonable jury to find Bridges actually knew that or that he did not honestly believe getting rid of Dupont and Moseley would attract investors to FFAC.

The plaintiffs also point to FFAC's ultimate transfer of assets to Covenant Aerospace as evidence that Bridges had no intention of having FFAC pay Dupont the Adequate Protection Payments due to him and that Bridges' January 7, 2013, statement was an intentional falsehood. Those conclusions do not follow from FFAC's conduct, which, except for the failure to make payments to the plaintiffs, appears to be consistent with what was contemplated by the Settlement Agreement. For example, § 3.29 of the Settlement Agreement acknowledges that investment in FFAC would take the form of an asset sale to a new corporate entity in exchange for cash, royalties and an equity interest in the new entity. Dupont and Moseley further agreed that such an asset sale was reasonable and necessary for FFAC to accomplish its business goals. Settlement Agreement §§ 5.06 & 5.20. The fact that FFAC has actually accomplished the transfer of assets, by itself, is not sufficient to cause a reasonable jury to conclude that Bridges never intended to pay Dupont his monthly payments. If the asset transfer did not occur as contemplated by the

7

Settlement Agreement, the plaintiffs' remedy lies with FFAC for breach of contract, not with Bridges.

Because no reasonable jury could find that Bridges or Littlefield committed common law fraud by making a false statement of material fact on or around January 7, 2013, the Court finds that Bridges and Littlefield are entitled to summary judgment on Count 2. The Court therefore need not address their arguments regarding reliance or the pleading of damages.

**V.    Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the motion for partial summary judgment and/or to dismiss filed by Bridges and Littlefield (Doc. 72);
- **DISMISSES** Count 2 **with prejudice** as to Bridges and Littlefield; and
- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

Defendants Bridges and Littlefield are terminated as parties to this case. The only remaining claim is Count 1 for breach of contract against FFAC.

**IT IS SO ORDERED.**
**DATED: October 21, 2014**

                                              s/J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**